UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SKECHERS U.S.A., INC. and SKECHERS U.S.A., INC. II,<br><br>Plaintiffs,<br><br>v.<br><br>Easy Spirit LLC and Marc Fisher Holdings LLC,<br><br>Defendants. | Case No.: _____<br><br>COMPLAINT FOR PATENT INFRINGEMENT<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Skechers U.S.A., Inc. and Skechers U.S.A., Inc. II (collectively, "Skechers" or "Plaintiffs") bring this action against Defendants Easy Spirit LLC ("Easy Spirit") and Marc Fisher Holdings LLC ("Marc Fisher") (collectively, "Defendants") for their infringement of Skechers' U.S. Patent Nos. 12,011,064 ("the '064 Patent"), 12,336,594 ("the '594 Patent"), and 12,285,076 ("the '076 Patent") (collectively, "the Asserted Patents"), and allege as follows:

## NATURE OF THE ACTION

1.     Since it began as a start-up shoe company with a single line of footwear in 1992, Skechers has grown to become the third-largest footwear company in the world. That growth has occurred in significant part because of innovations that enhance the quality, comfort and performance of its shoes. As a lifestyle and performance footwear company, Skechers continuously develops new shoe designs and advances the state of the art so that its shoes have the broadest consumer benefits and appeal.

2.     To protect its innovations, Skechers has sought and been awarded patents from the United States Patent and Trademark Office. Over decades, Skechers has invested hundreds of millions of dollars researching, creating, and promoting its new shoe designs and shoe innovations, supported by representatives including Mr. T, Martha Stewart, Snoop Dogg, Doja Cat, Willie

Nelson, Sugar Ray Leonard, Ringo Starr, Britney Spears, Carrie Underwood, Meghan Trainor, Tony Romo, Brooke Burke, Kim Kardashian, Howie Long, and Robert Downey Jr. On the strength of its legally-protected innovations, Skechers has grown to sell its shoes in hundreds of countries and in thousands of retail stores, as well as through its website and numerous third-party websites.

3.    Of particular import here, the United States Patent Office has recognized the innovative nature of Skechers' "Slip-in" footwear, which among other things enables easier donning and removal by consumers, awarding patent protection to certain inventions discovered to be beneficial in connection with such shoes. Skechers invested substantial amounts of time, effort, and financial resources into the development of that pioneering shoe technology, which substantially improves the ownership experience for users of those shoes. Skechers' Slip-in footwear engineers, in particular, developed a shoe design that makes putting on and removing certain types of shoes substantially easier than in the past. Traditionally, when a user wanted to put on a sports shoe, the process often required bending over and using both hands, or using a shoe horn. Skechers' Slip-in footwear designs, however, can substantially facilitate the entry and exit of the foot from the shoe by among other things enabling beneficial deformations in and around the heel region of the shoe at desired times while also helping to comfortably and effectively secure the foot in the shoe during normal wear.

4.    Skechers has manufactured and sold millions of pairs of shoes in styles embodying the patented technology that is the subject of this complaint. These shoes embody innovative, patented technological developments pioneered by Skechers that, as explained above, significantly benefit Skechers' customers.

5.    Defendants have each infringed, and each continue to infringe, Skechers' U.S. Patent Nos. 12,011,064 ("the '064 Patent"), 12,336,594 ("the '594 Patent"), and 12,285,076 ("the

'076 Patent"). Following Skechers' success with its patented technology in the marketplace, Defendants began making, using, selling, offering to sell, and/or importing "Easy Spirit" branded shoes that infringe the '064, '594, and '076 Patents, in competition with Skechers. Defendants have done so with knowledge of Skechers patent rights and without even contacting Skechers to request a license to Skechers' intellectual property protecting the innovations used in their shoes. As demonstrated in more detail below, Defendants' shoes infringe Skechers' patent claims protecting innovations associated with its Slip-in footwear technology. By this action, Skechers seeks to stop Defendants' patent infringement and obtain appropriate compensation for that infringement.

## **PARTIES**

6.     Plaintiff Skechers U.S.A., Inc. is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business located at 228 Manhattan Beach Blvd., Manhattan Beach, California 90266.

7.     Plaintiff Skechers U.S.A., Inc. II is a corporation duly organized and existing under the laws of the State of Virginia with its principal place of business located at 228 Manhattan Beach Blvd., Manhattan Beach, California 90266. Skechers U.S.A., Inc. II is a wholly-owned subsidiary of Skechers U.S.A., Inc.

8.     On information and belief, Defendant Easy Spirit is Delaware company with its principal place of business located at 777 W. Putnam Ave., Greenwich, Connecticut 06830.

9.     On information and belief, Defendant Marc Fisher is a Delaware company with its principal place of business located at 777 W. Putnam Ave., Greenwich, Connecticut 06830. On information and belief, Defendant Marc Fisher Holdings, LLC is one of multiple related corporate entities doing business under the name "Marc Fisher."

10.     On information and belief, in or around January 2017, Defendant Marc Fisher acquired the Easy Spirit brand. On information and belief, Defendant Marc Fisher is responsible for the development and commercialization of Easy Spirit branded shoes, including the products accused of infringement in this litigation.

## JURISDICTION AND VENUE

11.     Jurisdiction in this Court arises under the provisions of 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (any Act of Congress relating to patents or trademarks), and 35 U.S.C. §§ 101 et seq. and, in particular, § 271 (U.S. Patent Law).

12.     This Court has personal jurisdiction over Defendants because they have committed and continue to commit acts of infringement in violation of 35 U.S.C. § 271 and place infringing products into the stream of commerce, with the knowledge or understanding that such products are sold in the State of New York, including in this District.  On information and belief, Defendants each derive revenue from the sale of infringing products within this District, expect their actions to have consequences within this District, and derive revenue from interstate and international commerce.

13.     Venue in this Court is proper under the provisions of 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because Defendants transact business within this District and, among other things, offer for sale in this District products that infringe the Skechers patent at issue in this case. On information and belief, Defendant Marc Fisher maintains corporate offices and showrooms in this district and employs numerous individuals in New York City, including those whose LinkedIn profiles list their location as such. Similarly, on information and belief, Defendant Easy Spirit employs numerous individuals in New York City, including those whose LinkedIn profiles list their location as such. Furthermore, Defendants have has previously availed themselves of this

District's courts, including in the cases captioned *Easy Spirit, LLC v. Skechers U.S.A., Inc., et al*, No. 1:19-cv-03299 and *Aquazzura Italia SRL v. Trump et al*, No. 1:16-cv-04782. Furthermore, on information and belief, Defendants sell and offer for sale the Accused Products in this litigation through stores located in this District, including, for example, at Macy's, 151 W 34th Street, New York, NY 10001, and Nordstrom NYC Flagship, 225 W 57th Street, New York, NY 10019.

## SKECHERS' PATENT RIGHTS

14.     Skechers invested substantial resources and effort into developing innovative technology associated with Slip-in footwear. This technology, which among other things facilitates easier entry into, and removal, of shoes, has been awarded patent protection by the U.S. Patent and Trademark Office.

15.     Skechers owns all rights, title, and interest in and to U.S. Patent No. 12,011,064 ("the '064 Patent"), including the right to seek damages for past, current, and future infringement thereof.

16.     The '064 Patent is titled "Footwear Counter for Easier Entry and Removal," and names John Maxwell Weeks, Scott Kelley, Frank F. Chuang, Pei-Chun Liao, Johnson Tja, Hui Xie, and Kurt Stockbridge as co-inventors.

17.     The '064 Patent was duly and lawfully issued on June 18, 2024. The '064 Patent has been in full force and effect since its issuance. A copy of the '064 Patent is attached hereto as Exhibit 1.

18.     Skechers owns all rights, and interest in and to U.S. Patent No. 12,336,594 ("the '594 Patent"), including the right to seek damages for past, current, and future infringement thereof.

19.     The '594 Patent is titled "Footwear Counter for Easier Entry and Removal," and names John Maxwell Weeks, Scott Kelley, Frank F. Chuang, Pei-Chun Liao, Johnson Tja, Hui Xie, and Kurt Stockbridge as co-inventors.

20.     The '594 Patent was duly and lawfully issued on June 24, 2025. The '594 Patent has been in full force and effect since its issuance. A copy of the '594 Patent is attached hereto as Exhibit 2.

21.     Skechers owns all rights, and interest in and to U.S. Patent No. and 12,285,076 ("the '076 Patent"), including the right to seek damages for past, current, and future infringement thereof.

22.     The '076 Patent is titled "Footwear Counter for Easier Entry and Removal," and names John Maxwell Weeks, Scott Kelley, Frank F. Chuang, Pei-Chun Liao, Johnson Tja, Hui Xie, and Kurt Stockbridge as co-inventors.

23.     The '076 Patent was duly and lawfully issued on April 29, 2025. The '076 Patent has been in full force and effect since its issuance. A copy of the '076 Patent is attached hereto as Exhibit 3.

## ACCUSED PRODUCTS

24.     The products at issue in this litigation include footwear products that are made, used, sold, offered for sale, and/or imported by the Defendants and that infringe one or more claims of the Asserted Patents, including, by way of example and without limitation, "Easy Spirit" branded shoes in the "SOEASY" collections (e.g., https://easyspirit.com/collections/slip-ons-shoes?filter.p.m.custom.web_technology=So+Easy, last visited December 23, 2025), such as the Warner SOEASY Slip On Shoe and other products similar to the foregoing (the "Accused Products").

## FIRST CLAIM FOR RELIEF

[Infringement of the '064 Patent]

25.  Skechers realleges and reincorporates by reference the full text of all the foregoing numbered Paragraphs as if fully set forth herein.

26.  The '064 Patent, among other things, states that it "generally relates to a heel counter or a component of a heel counter of a shoe, and in particular a heel counter that is designed to allow for easier entry of the wearer's foot into the shoe." Ex. 1 at 1:16–19.

27.  As the '064 Patent explains, "[c]onventionally, when donning footwear such as sports shoes, the user must often use one or both hands or operate a shoe horn separate from the shoe to properly insert the foot into the shoe and secure the quarter from collapsing under the heel." *Id.* at 1:23–27.

28.  The '064 Patent states that in "one aspect of the invention, a heel cup may be uniformly molded with an upper portion, midportion, and lower portion . . . The midportion and lower portion may form a concave structure configured to receive the heel. The upper portion of the heel cup has a first configuration in its native state and is capable of distorting into a second configuration under a load of a user's foot . . . . In the second configuration, at least part of the upper portion is lowered relative to the first configuration and the upper portion is capable of returning to the first configuration after the load of the user's foot is removed." *Id.* at 1:34–46.

29.  Skechers is informed and believes, and thereon alleges, that Defendants have infringed and unless enjoined will continue to infringe one or more claims of the '064 Patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering to sell, and selling within the United States, supplying or causing to be supplied in or from the United States, and

importing into the United States, without authority or license, shoes that use the inventions described in the '064 Patent.

30.    For example, Easy Spirit shoes including but not limited to the Warner SOEASY Slip On embody every limitation of at least Claim 14 of the '064 Patent, both literally and under the doctrine of equivalents, as set forth below. The further descriptions below, which are based on an analysis of publicly-available information, are preliminary examples and non-limiting.

**CLAIM 14**

**["14. An article of footwear comprising:"]**

31.    The Warner SOEASY Slip On is an article of footwear.



**["an upper and sole structure;"]**

32.    The Warner SOEASY Slip On includes an upper and a sole structure.

33.    For example, the top portion of the Warner SOEASY Slip On constitutes an upper and the bottom portion constitutes a sole structure.



**["the upper defining a foot receiving shoe opening;"]**

34.    The Warner SOEASY Slip On includes the upper defining a foot receiving shoe opening.

35.    For example, as shown below, the upper of the Warner SOEASY Slip On creates an opening for the user's foot.



**["a heel cup attached to the upper and extending from the sole structure to at least a portion of the rear heel collar of upper;"]**

36.    The Warner SOEASY Slip On includes a heel cup attached to the upper and extending from the sole structure to at least a portion of the rear heel collar of upper.

37.    For example, as shown in the cross-sectional image below, the Warner SOEASY Slip On contains a heel cup attached to the upper that extends from the sole structure to at least a portion of the rear heel collar of the upper.



Heel cup

**["the heel cup uniformly molded with an upper portion, midportion, and lower portion where in the upper portion has a smaller mediolateral length than the midportion;"]**

38.    The Warner SOEASY Slip On includes the heel cup uniformly molded with an upper portion, midportion, and lower portion where in the upper portion has a smaller mediolateral length than the midportion.

39.    For example, as shown in the images below, the heel cup of the Warner SOEASY Slip On is uniformly molded, with an upper portion, a midportion, and a lower portion. Furthermore, as shown below, the upper portion of the heel cup of the Warner SOEASY Slip On has a smaller mediolateral length than the midportion.



**["a heel region of the upper having a rearward facing upper concavity and a forward facing lower concavity;"]**

40.    The Warner SOEASY Slip On includes a heel region of the upper having a rearward facing upper concavity and a forward facing lower concavity.

41.    For example, the heel regions of the Warner SOEASY Slip On forms an "s" shape in which the top portion of the heel cup forms a concavity facing away from the front of the shoe, and the bottom of the "s" forms a concavity that faces towards the front of the shoe.



Rearward facing upper concavity

Forward facing lower concavity

**["the upper concavity having a first depth;"]**

42.    The Warner SOEASY Slip On includes the upper concavity having a first depth.

43.    For example, the upper concavity forms a depth when measured relative to a line formed between the top of the heel cup and an inflexion point of the heel cup.



**["the lower concavity having a second depth;"]**

44.    The Warner SOEASY Slip On includes the lower concavity having a second depth.

45.    For example, the upper lower forms a depth when measured relative to a line formed between the bottom of the heel cup and an inflexion point of the heel cup.



**["the second depth being greater than the first depth;"]**

46.    The Warner SOEASY Slip On includes the second depth being greater than the first depth.

47.    For example, when measured as the depth of the respective concavities formed between the ends of the heel cup and this inflexion point, the depth of the lower concavity is greater than the depth of the upper concavity.



First depth vs. second depth

**["the lower concavity being configured to cup a calcaneus bone region of a heel;"]**

48.    The Warner SOEASY Slip On includes the lower concavity being configured to cup a calcaneus bone region of a heel.

49.    For example, the lower concavity of the Warner SOEASY Slip On forms the heel cup, into which the calcaneus bone of region of a heel fits when the shoe is worn.



**["the upper portion having a first configuration;"]**

50.    The Warner SOEASY Slip On includes a first configuration.

51.    For example, the Warner SOEASY Slip On has a first configuration.



**["the upper portion capable of distorting into a second configuration under a load of a user's foot when the user is donning the footwear;"]**

52.    The Warner SOEASY Slip On includes the upper portion capable of distorting into a second configuration under a load of a user's foot when the user is donning the footwear.

53.    For example, the upper portion of the Warner SOEASY Slip On is capable of distorting into a second configuration under the load of a foot as it is placed into the shoe.



**["the upper portion capable of returning to the first configuration after the load of the user's foot is removed; and wherein"]**

54.    The Warner SOEASY Slip On includes the upper portion capable of returning to the first configuration after the load of the user's foot is removed.

55.    For example, once the foot is placed into the shoe, the upper portion of the Warner SOEASY Slip On returns to the first configuration.



**["the upper portion in the first configuration has a downward incline with a first angle relative to a vertical line that is normal to a horizontal surface of the floor;"]**

56.    The Warner SOEASY Slip On includes the upper portion in the first configuration has a downward incline with a first angle relative to a vertical line that is normal to a horizontal surface of the floor.

57.    For example, in the first configuration, the upper portion of the Warner SOEASY Slip On forms a first angle with a downward incline relative to a vertical line.



**["the upper portion in the second configuration has an incline with a second angle; and"]**

58.    The Warner SOEASY Slip On includes the upper portion in the second configuration has an incline with a second angle.

59.    For example, when distorted into the second configuration, the upper portion of the Warner SOEASY Slip On has an incline with a second angle.



**["the second angle is greater than the first angle; and"]**

60.    The Warner SOEASY Slip On includes the second angle is greater than the first angle.

61.    For example, the second angle of the Warner SOEASY Slip On is greater than the first angle.

First angle →

Second angle →



**["a lower region of the central portion extends outwardly in the second configuration in a direction away from the shoe opening that causes the shoe opening to widen along the mediolateral direction."]**

62.    The Warner SOEASY Slip On includes a lower region of the central portion extends outwardly in the second configuration in a direction away from the shoe opening that causes the shoe opening to widen along the mediolateral direction.

63.    For example, when a user's foot exerts pressure on the top of the heel region, the distortion causes the central portion of the heel region to extend away from the shoe opening such that it causes the shoe opening to widen along the mediolateral direction.





64.    Accordingly, the Warner SOEASY Slip On embodies every limitation of at least Claim 14 of the '064 Patent.

65.    Defendants have thus directly infringed and continue to directly infringe the '064 Patent, as provided in 35 U.S.C. § 271(a), including but not limited to by making, using, selling, and/or offering to sell, in this District and elsewhere in the United States, and/or importing into the United States, the Accused Products.

66.    Defendants' infringement of the '064 Patent has caused damage to Plaintiffs. Plaintiffs are entitled to recover from Defendants the damages sustained by the Plaintiffs as a result of Defendants' wrongful acts in an amount subject to proof at trial.

67.    Defendants' infringement of the '064 Patent has been and continues to be willful. For example, Defendants have had knowledge and notice of the '064 Patent at least since September 9, 2024, when its agents or representatives received a copy of the original Complaint filed in the co-pending case styled as *Skechers U.S.A., Inc., et al. v. Marc Fisher Holdings LLC, et al.*, No. 24-cv-6708 (ALC) (BCM) (the "Rockport Matter"). Despite this, Defendants have continued without license to make, use, sell, offer to sell, and/or import the Accused Products that infringe the '064 Patent, in violation of 35 U.S.C. § 271(a).

68.    As a result of Defendants' infringement of the '064 Patent, Skechers has been damaged. Skechers is entitled to recovery for damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial.

69.    Moreover, Defendants' infringing acts and practices have caused and are causing immediate and irreparable harm to Skechers.

## SECOND CLAIM FOR RELIEF

[Infringement of the '594 Patent]

70.    Skechers realleges and reincorporates by reference the full text of all the foregoing numbered Paragraphs as if fully set forth herein.

71.    The '594 Patent, among other things, states that it "generally relates to a heel counter or a component of a heel counter of a shoe, and in particular a heel counter that is designed to allow for easier entry of the wearer's foot into the shoe." Ex. 2 at 1:17–20.

72.    As the '594 Patent explains, "[c]onventionally, when donning footwear such as sports shoes, the user must often use one or both hands or operate a shoe horn separate from the shoe to properly insert the foot into the shoe and secure the quarter from collapsing under the heel." *Id.* at 1:24–28.

73.    The '594 Patent states that "[t]he thickness of the heel cup **52** may be reduced at various locations. . . . In another exemplary embodiment, the thickness T**1** may be reduced in certain areas to provide greater flexibility to the heel cup **52** when donning or removing the shoe **12**. . . . The thinner regions may provide increased flexibility and bending of the heel cup **52** which provides the necessary compressibility under the load of a user's foot such as during the donning of a shoe **12**. Such compression may allow the upper portion **64** and/or the mid-portion **58** of the heel cup **52** to move rearward and widen the shoe opening **48** to allow easier entry of the foot." *Id.* at 4:14–43.

74.    The '594 Patent further explains that "[o]nce a foot is inserted into the shoe, the heel counter may have a compressible layer, such as a foam component, that secures or enhances securement of the foot during user's normal wear of the shoe." *Id.* at 3:44–47. "[T]he foam layer **92** may protrude and extend further into the shoe opening **48**. . . . Since the foam is compressible, the foam may be compressed by the heel during foot insertion or removal and hold the ankle of the user's foot once the foot is inserted." *Id.* at 6:13–24.

75.    The '594 Patent also states that the heel cup "may be used in combination with a shoe upper **16** having at least one elastic region **78** located on the sides of the upper between the heel cup **52** and the front portion of the foot receiving shoe opening **48**. The elastic region **78** may have one or more elastic materials that allow the rear portion of the heel counter **32** to be temporarily moved back to widen the foot receiving shoe opening **48** for easier insertion of the foot into the shoe **12**." *Id.* at 7:32–39.

76.    Skechers is informed and believes, and thereon alleges, that Defendants have infringed and unless enjoined will continue to infringe one or more claims of the '594 Patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering to sell, and selling

within the United States, supplying or causing to be supplied in or from the United States, and importing into the United States, without authority or license, shoes that use the inventions described in the '594 Patent.

77.    For example, Easy Spirit shoes including but not limited to the Warner SOEASY Slip On embody every limitation of at least Claim 1 of the '594 Patent, both literally and under the doctrine of equivalents, as set forth below. The further descriptions below, which are based on an analysis of publicly-available information, are preliminary examples and non-limiting.

**CLAIM 1**

**["1. A shoe, comprising:"]**

78.    The Warner SOEASY Slip On is a shoe.



**["a sole;"]**

79.    The Warner SOEASY Slip On includes a sole.

80.    For example, as shown below, the bottom portion of the shoe constitutes a sole.



sole

**[“an upper, including at least one layer of elastic material positioned to stretch and create tension that enhances securement of a foot inserted into the shoe;”]**

81.    The Warner SOEASY Slip On includes an upper, including at least one layer of elastic material positioned to stretch and create tension that enhances securement of a foot inserted into the shoe.

82.    For example, as shown below, the upper of the Warner SOEASY Slip On contains a layer of elastic material in a gusset that is positioned to stretch and create tension, enhancing the securement of a foot inserted into the shoe.







**["a heel cup, comprised of polymer material, affixed to the upper,"]**

83.    The Warner SOEASY Slip On includes a heel cup, comprised of polymer material, affixed to the upper.

84.    For example, Warner SOEASY Slip On includes a heel cup that is comprised of plastic and is affixed to the upper, as shown in the cross-section below.



**["wherein the heel cup comprises an upper portion, a midportion, and a lower portion,"]**

85.     The Warner SOEASY Slip On includes wherein the heel cup comprises an upper portion, a midportion, and a lower portion.

86.     For example, as shown in the side view image below, the heel cup has an upper portion, midportion, and lower portion.



**["an interior foam layer adjacent to at least an interior wall of the upper portion of the heel cup,"]**

87.     The Warner SOEASY Slip On includes an interior foam layer adjacent to at least an interior wall of the upper portion of the heel cup.

88.     For example, as shown in the cross-sectional and side-view images below, the Warner SOEASY Slip On includes an interior foam layer adjacent to at least an interior wall of the upper portion of the heel cup.



Interior foam layer

Interior foam layer

**["wherein the interior foam layer is compressible,"]**

89.    The Warner SOEASY Slip On includes wherein the interior foam layer is compressible.

90.    For example, as shown in the cross-sectional image below, the interior foam layer is compressible.



**["wherein the interior foam layer extends into a shoe opening, providing securement of the foot once inserted,"]**

91.    The Warner SOEASY Slip On includes wherein the interior foam layer extends into a shoe opening, providing securement of the foot once inserted.

92.    For example, as shown in the images below, the interior foam layer extends into a shoe opening and provides securement of the foot once it is inserted.



Interior foam layer





**["wherein the heel cup includes at least one reduced thickness region providing flexibility to the heel cup when donning or removing the shoe."]**

93.    The Warner SOEASY Slip On includes wherein the heel cup includes at least one reduced thickness region providing flexibility to the heel cup when donning or removing the shoe.

94.    For example, when measured with a digital caliper, the Warner SOEASY Slip On's heel cup includes at least one reduced thickness region providing flexibility to the heel cup when donning or removing the shoe.



95.    Accordingly, the Warner SOEASY Slip On embodies every limitation of at least Claim 1 of the '594 Patent.

96.    Defendants have thus directly infringed and continue to directly infringe the '594 Patent, as provided in 35 U.S.C. § 271(a), including but not limited to by making, using, selling, and/or offering to sell, in this District and elsewhere in the United States, and/or importing into the United States, the Accused Products.

97.     Defendants' infringement of the '594 Patent has caused damage to Plaintiffs. Plaintiffs are entitled to recover from Defendants the damages sustained by the Plaintiffs as a result of Defendants' wrongful acts in an amount subject to proof at trial.

98.     Defendants' infringement of the '594 Patent has been and continues to be willful. For example, Defendants have had knowledge and notice of the '594 Patent since at least July 31, 2025, when its representatives or agents received a copy of Plaintiffs' proposed Second Amended Complaint in the Rockport Matter. Despite this, Defendants continued without license to make, use, sell, offer to sell, and/or import the Accused Products, in violation of 35 U.S.C. § 271(a).

99.     As a result of Defendants' infringement of the '594 Patent, Skechers has been damaged. Skechers is entitled to recovery for damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial.

100.     Moreover, Defendants' infringing acts and practices have caused and are causing immediate and irreparable harm to Skechers.

**THIRD CLAIM FOR RELIEF**

[Infringement of the '076 Patent]

101.     Skechers realleges and reincorporates by reference the full text of all the foregoing numbered Paragraphs as if fully set forth herein.

102.     The '076 Patent, among other things, states that it "generally relates to a heel counter or a component of a heel counter of a shoe, and in particular a heel counter that is designed to allow for easier entry of the wearer's foot into the shoe." Ex. 3 at 1:17–20.

103.     As the '076 Patent explains, "[c]onventionally, when donning footwear such as sports shoes, the user must often use one or both hands or operate a shoe horn separate from the

shoe to properly insert the foot into the shoe and secure the quarter from collapsing under the heel." *Id.* at 1:24–28.

104.    The '076 Patent explains that in "an exemplary embodiment, the rearmost portion of the heel cup **52** may have an overall vertical cross-sectional shape that resembles approximately an S wave . . . ." *Id.* at 5:38–40. The '076 Patent further explains that the "thickness of the heel cup **52** may be reduced at various locations. . . . In another exemplary embodiment, the thickness T**I** may be reduced in certain areas to provide greater flexibility to the heel cup **52** when donning or removing the shoe **12**. . . . The reduced thickness T**I** of the central region of the mid-portion **58** may allow for the heel cup **52** to compress under sufficient load. . . . Such compression may allow the upper portion **64** and/or the mid-portion **58** of the heel cup **52** to move rearward and widen the shoe opening **48** to allow easier entry of the foot." *Id.* at 4:14–43.

105.    The '076 Patent further explains that "[o]nce a foot is inserted into the shoe, the heel counter may have a compressible layer, such as a foam component, that secures or enhances securement of the foot during user's normal wear of the shoe." *Id.* at 3:44–47. "[T]he foam layer **92** may protrude and extend further into the shoe opening **48**. . . . Since the foam is compressible, the foam may be compressed by the heel during foot insertion or removal and hold the ankle of the user's foot once the foot is inserted." *Id.* at 6:13–24. "The compressible layer **100** may be covered by any type of textile. The textile may be elastic and may have wicking properties. The textile may be form fitted to the exterior shape of the compressible layer." *Id.* at 9:61–64.

106.    The '076 Patent also states that the heel cup "may be used in combination with a shoe upper **16** having at least one elastic region **78** located on the sides of the upper between the heel cup **52** and the front portion of the foot receiving shoe opening **48**. The elastic region **78** may have one or more elastic materials that allow the rear portion of the heel counter **32** to be

temporarily moved back to widen the foot receiving shoe opening **48** for easier insertion of the foot into the shoe **12**." *Id.* at 7:32–39.

107.    Skechers is informed and believes, and thereon alleges, that Defendants have infringed and unless enjoined will continue to infringe one or more claims of the '076 Patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering to sell, and selling within the United States, supplying or causing to be supplied in or from the United States, and importing into the United States, without authority or license, shoes that use the inventions described in the '076 Patent.

108.    For example, Easy Spirit shoes including but not limited to the Warner SOEASY Slip On embody every limitation of at least Claim 23 of the '076 Patent, both literally and under the doctrine of equivalents, as set forth below. The further descriptions below, which are based on an analysis of publicly-available information, are preliminary examples and non-limiting.

**CLAIM 1**

**["A shoe, comprising:"]**

109.    The Warner SOEASY Slip On is a shoe.



**["a sole;"]**

110.    The Warner SOEASY Slip On includes a sole.

111.    For example, as shown below, the bottom portion of the Warner SOEASY Slip On constitutes a sole.



sole

**["an upper, including at least one layer of elastic material positioned to stretch and create tension that enhances securement of a foot inserted into the shoe;"]**

112.    The Warner SOEASY Slip On includes an upper, including at least one layer of elastic material positioned to stretch and create tension that enhances securement of a foot inserted into the shoe.

113.    For example, as shown below, the upper of the Warner SOEASY Slip On contains a layer of elastic material in a gusset that is positioned to stretch and create tension, enhancing the securement of a foot inserted into the shoe.







**["a heel cup, comprised of polymer material, affixed to the upper,"]**

114.    The Warner SOEASY Slip On includes a heel cup, comprised of polymer material, affixed to the upper.

115.    For example, Warner SOEASY Slip On includes a heel cup that is comprised of plastic and affixed to the upper, as shown in the cross-section below.



**["wherein the heel cup comprises an upper portion, a midportion, and a lower portion,"]**

116.    The Warner SOEASY Slip On includes wherein the heel cup comprises an upper portion, a midportion, and a lower portion.

117.    For example, as shown in the side view image below, the heel cup has an upper portion, midportion, and lower portion.



**["wherein, in a first configuration, the upper portion of the heel cup has a downward incline with a first angle relative to a vertical line that is normal to a horizontal surface of a floor;"]**

118. The Warner SOEASY Slip On includes wherein, in a first configuration, the upper portion of the heel cup has a downward incline with a first angle relative to a vertical line that is normal to a horizontal surface of the floor.

119. For example, as shown in the image below the upper portion of the heel cup of the Warner SOEASY Slip On in a first configuration has a downward incline with a first angle relative to a vertical line that is normal to a horizontal surface of the floor.



First angle →

**["the upper portion is capable of distorting into a second configuration under a load of the foot when donning the shoe, wherein in the second configuration the upper portion has a downward incline with a second angle relative to the vertical line,"]**

120. The Warner SOEASY Slip On includes the upper portion is capable of distorting into a second configuration under a load of the foot when donning the shoe, wherein in the second

configuration the upper portion has a downward incline with a second angle relative to the vertical line.

121. For example, as shown below, when donning the shoe, the upper portion is capable of distorting into a second configuration under the load of the foot, and in the second configuration, the upper portion has a downward incline with a second angle relative to the vertical line.



**["the second angle being greater than the first angle;"]**

122. The Warner SOEASY Slip On includes the second angle being greater than the first angle.

123. For example, as shown below, the second angle of the Warner SOEASY Slip On is greater than the first angle.



First angle →

Second angle →

**["an interior foam layer adjacent to at least an interior wall of the upper portion of the heel cup,"]**

124.    The Warner SOEASY Slip On includes an interior foam layer adjacent to at least an interior wall of the upper portion of the heel cup.

125.    For example, as shown in the cross-section and side-view images below, the Warner SOEASY Slip On includes an interior foam layer adjacent to at least an interior wall of the upper portion of the heel cup.



Interior foam layer

Interior foam layer

**["wherein the interior foam layer is compressible,"]**

126.    The Warner SOEASY Slip On includes wherein the interior foam layer is compressible.

127.    For example, as shown in the cross-sectional image below, the interior foam layer is compressible.



**["wherein the interior foam layer extends into a shoe opening, providing securement of the foot once inserted; and"]**

128.    The Warner SOEASY Slip On includes wherein the interior foam layer extends into a shoe opening, providing securement of the foot once inserted.

129.    For example, as shown in the images below, the interior foam layer extends into a shoe opening and provides securement of the foot once it is inserted.



Interior foam layer





**["wherein the heel cup includes at least one reduced thickness region providing flexibility to the heel cup when donning or removing the shoe."]**

130. The Warner SOEASY Slip On includes wherein the heel cup includes at least one reduced thickness region providing flexibility to the heel cup when donning or removing the shoe.

131. For example, as shown below, when measured with a digital caliper, the heel cup of the Warner SOEASY Slip On includes at least one reduced thickness region providing flexibility to the heel cup when donning or removing the shoe.



132.    Accordingly, the Warner SOEASY Slip On embodies every limitation of at least Claim 23 of the '076 Patent.

133.    Defendants have thus directly infringed and continue to directly infringe the '076 Patent, as provided in 35 U.S.C. § 271(a), including but not limited to by making, using, selling, and/or offering to sell, in this District and elsewhere in the United States, and/or importing into the United States, the Accused Products.

134.    Defendants' infringement of the '076 Patent has caused damage to Plaintiffs. Plaintiffs are entitled to recover from Defendants the damages sustained by the Plaintiffs as a result of Defendants' wrongful acts in an amount subject to proof at trial.

135.    Defendants' infringement of the '076 Patent has been and continues to be willful. For example, Defendants have had knowledge and notice of the '076 Patent since at least July 31, 2025, when its representatives or agents received a copy of Plaintiffs' proposed Second Amended

Complaint in the Rockport Matter. Despite this, Defendants continued without license to make, use, sell, offer to sell, and/or import the Accused Products, in violation of 35 U.S.C. § 271(a).

136.    As a result of Defendants' infringement of the '076 Patent, Skechers has been damaged. Skechers is entitled to recovery for damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial.

137.    Moreover, Defendants' infringing acts and practices have caused and are causing immediate and irreparable harm to Skechers.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Skechers respectfully requests relief against Defendants as follows:

1.    A judgment declaring that Defendants have infringed one or more claims of Skechers' asserted patents;

2.    An order and judgment preliminarily and permanently enjoining Defendants' and their officers, directors, agents, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their subsidiaries, divisions, successors and assigns, from further acts of infringement of Skechers' asserted patent;

3.    A judgment awarding Skechers all damages adequate to compensate for Defendants' infringement of Skechers' asserted patents, including, but not limited to, lost profits, and in no event less than a reasonable royalty for Defendants' acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

4.    A judgment awarding Skechers all damages, including treble damages, based on any infringement, at least since the filing of the initial complaint in this action, found to be willful, pursuant to 35 U.S.C. § 284, together with prejudgment interest;

5.      An order awarding Skechers supplemental damages, including interest, with an accounting, as needed;

6.      Costs of suit and reasonable attorneys' fees; and

7.      Any other remedy to which Skechers may be entitled, including under any other law that this Court may deem just and proper.

### **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Skechers hereby demands a trial by jury on all issues triable to a jury.

Dated: January 28, 2026

Respectfully Submitted

By: */s/ Jonathan Bach*

Jonathan Bach
**Shapiro Arato Bach LLP**
1140 Avenue of the Americas, 17th Fl.
New York, New York 10036
Tel: (212) 257-4897
Email: jbach@shapiroarato.com

Morgan Chu (to be admitted *pro hac vice*)
Sam Lu (to be admitted *pro hac vice*)
Benjamin W. Hattenbach (to be admitted *pro hac vice*)
Ian Washburn (to be admitted *pro hac vice*)
Grant Gabriel (to be admitted *pro hac vice*)
Aron Berger (to be admitted *pro hac vice*)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
Email: mchu@irell.com
Email: slu@irell.com
Email: bhattenbach@irell.com
Email: iwashburn@irell.com
Email: ggabriel@irell.com
Email: aberger@irell.com

Kamran Vakili (to be admitted *pro hac vice*)
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
Telephone: (949) 760-0991
Facsimile: (949) 760-5200
Email: kvakili@irell.com

*Counsel for Plaintiffs*
SKECHERS U.S.A., INC. and SKECHERS
U.S.A., INC. II